UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| WAYDE COLEMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:11-cv-01256-TWP-DKL |
| ) | |
| TERRY CURRY Marion County Prosecutor's ) Office, Final Policy Maker, in his official ) capacity, administrative and investigative ) capacity, ) REBECCA MEYER, in her administrative, ) investigative capacity and not official capacity, ) PAUL R CIESIELSKI official capacity as ) Chief of Police Indianapolis Metropolitan ) Police Department (IMPD), ) DENNY RANDALL JASON IMPD, D9879, ) in his individual and investigative capacity, ) JUDGE RUEBEN B. HILL Criminal Court ) Rm 18, in his official capacity for injunctive, ) declarative relief and consequential relief that ) the court deems applicable, ) ) Defendants. ) | |

**ENTRY DISCUSSING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on the parties' cross-motions for summary judgment. Plaintiff, Wayde Coleman ("Mr. Coleman"), was arrested on October 21, 2010. Months later the charges were dropped and Mr. Coleman filed this civil rights action against five defendants[1] for their role in arresting and prosecuting him for battery on a minor and criminal confinement. These defendants include arresting officer Randall Jason Denny ("Officer Denny"), Chief of

---

[1] In his Complaint, Mr. Coleman includes the City of Indianapolis as the real party in interest in the caption but there are no viable claims alleged against the City of Indianapolis and it is apparent from the Second Amended Complaint and subsequent filings that while the City of Indianapolis may have an interest in this action, it is not a defendant. The **Clerk is directed to terminate the City of Indianapolis as a defendant in this action**.

Police of the Indianapolis Metropolitan Police Department ("IMPD") Paul R. Ciesielski ("Chief Ciesielski"), Marion County Prosecutor Terry Curry ("Prosecutor Curry"), Deputy Prosecutor Rebecca Meyer ("Deputy Prosecutor Meyer"), and Judge Rueben B. Hill ("Judge Hill") (collectively, the "Defendants"). Mr. Coleman's claims are brought pursuant to 42 U.S.C. § 1983. For the reasons explained in this Entry, the Defendants' Motion for Summary Judgment (Dkt. 62) is **GRANTED** and Mr. Coleman's Motion for Summary Judgment (Dkt. 55) is **DENIED**.

## I. BACKGROUND

The following facts are pertinent to the pending motions.

On October 21, 2010, Officer Denny responded to a non-emergency report of a battery near 10th Street and Cumberland Road in Indianapolis, Indiana. *See* Dkt. 64-1 Affidavit of Randall Jason Denny. When Officer Denny arrived at the scene, the parents of S.R., a minor, reported an assault on the S.R. by Wayde Coleman, who lives across the street.[2]

Officer Denny interviewed S.R. and his parents regarding the occurrence. S.R. stated that Mr. Coleman had placed him in a hold and refused to release him.[3] Officer Denny observed and photographed marks on the skin of S.R., which appeared consistent with S.R's account of events. A third party, S.R.'s minor cousin witnessed the occurrence and corroborated S.R.'s version of events to Officer Denny as well.[4]

---

[2] Mr. Coleman states in his response that the initial 9-1-1 call was made by Brandy Whitley, the aunt of S.R. Mr. Coleman states that she did not witness the incident. However, the identity of the individual who called 9-1-1 is not a material fact.

[3] Mr. Coleman refers the Court to Exhibit H attached to his motion for summary judgment. Exhibit H is a document titled Supplemental Discovery Statement, dated March 28, [2011]. In that statement, the S.R. minimizes the altercation with Mr. Coleman. That statement, however, is irrelevant to what Officer Denny knew or was told at the time of Mr. Coleman's arrest. *See* Dkt 57-8.

[4] Mr. Coleman attempts to dispute this fact by providing an excerpt from the deposition of Officer Denny taken in the course of Mr. Coleman's state criminal case. Apparently, the deposition is intended to show that the third party

Officer Denny then interviewed Mr. Coleman in front of his residence. Mr. Coleman told Officer Denny that the witnesses at the scene were lying. Mr. Coleman did not deny placing the S.R. in a wrestling hold, but indicated he was just "playing around". Mr. Coleman's daughter also witnessed the occurrence and stated that Mr. Coleman had placed the S.R. in a hold against the S.R.'s apparent will. The arresting officer, Officer Denny did not personally witness the alleged battery.

After interviewing S.R., S.R.'s family, Mr. Coleman, and all witnesses to the occurrence, Officer Denny called and spoke with an IMPD district detective regarding what he had learned at the scene.[5] With the IMPD detective's input, Officer Denny determined that probable cause existed to arrest Mr. Coleman for battery and criminal confinement.[6] Detective Smiley supported Officer Denny's conclusion that probable cause existed to arrest Mr. Coleman.

Officer Denny arrested Mr. Coleman without incident, placed him in his police cruiser, and drove him to a police transport wagon, which took him to the Arrestee Processing Center for booking.

Deputy Prosecutor Meyer was assigned the prosecution of Mr. Coleman on behalf of the State of Indiana. See Dkt. 64-2, Affidavit of Rebecca Meyer. Deputy Prosecutor Meyer

---

referenced was really the S.R's cousin and that their stories were inconsistent. However, that is not at all what the excerpt reveals. Instead, Officer Denny testified that there were not inconsistencies or different versions of events offered by S.R. and his cousin. The alternate version of events was offered by Mr. Coleman himself. Dkt. 70 at p. 3.

[5] Mr. Coleman admits that Officer Denny spoke with him on the scene but argues that he failed to include his statements in the probable cause affidavit. This argument is not consistent with the deposition excerpt provided by Mr. Coleman in support of his assertion. The excerpt reflects that Mr. Coleman's position was included in the probable cause affidavit; that is: "Officer Denny spoke to Wayde which is Wayde Coleman who stated that he wrestles with the kids and [S.R] specifically quite often. He stated that they were just playing around and that [S.R.] was crying only because Trina had said something mean to him during the altercation." Dkt. 70 at p. 6. Thus, it appears that Mr. Coleman's side of the story was included. Apparently, Mr. Coleman believes that Officer Denny should have reported in the probable cause affidavit Mr. Coleman's statement that S.R., his parents and the witnesses were lying to Officer Denny. However, recording that someone states that someone else is lying when the reported version of events are contradictory is not required.

[6] Mr. Coleman apparently attempts to dispute this fact by referencing an exchange during the criminal case deposition of Officer Denny. But that exchange is not inconsistent with Officer Denny's affidavit.

evaluated the incident in question and concluded based on her understanding of the facts that probable cause existed to proceed on the filed charges against Mr. Coleman for Battery, a Class A Misdemeanor, and Criminal Confinement, a Class D Felony.

On September 6-7, 2010, while being held in contempt, Mr. Coleman was denied medical attention by the on duty nurse and several unknown guards at the arrestee processing center.

On October 22, 2010, Mr. Coleman was advised by a magistrate judge that he was charged with battery and criminal confinement against a minor. The magistrate judge did not allow Mr. Coleman to make a statement. The magistrate judge stated that the evidence in front of him substantiated the arrest and he also found probable cause. Mr. Coleman was held on $5,000.00 bail and was unable to leave the Marion County Jail.

Five months later, on or about March 28, 2011, S.R. wrote a statement regarding his altercation with the Mr. Coleman, which minimized the occurrence[7], but did not directly contradict the version of events he previously related to Officer Denny. *See* Dkt 57-8. On May 2, 2011, Deputy Prosecutor Meyer met with the S.R. and his stepfather. Based on this meeting, Deputy Prosecutor Meyer believed that they supported moving forward with the prosecution of Mr. Coleman for battery of the minor.[8] Deputy Prosecutor Meyer then communicated with S.R. and his mother regarding the plea terms to be offered to Mr. Coleman, at which point both individuals expressed a reticence to be involved in Mr. Coleman's prosecution because he is the family's neighbor. Mr. Coleman ultimately rejected the proposed plea terms. After Mr. Coleman

---

[7] S.R. states that he and Mr. Coleman were "playing" and "wrestling" and he became embarrassed and angry when people laughed at him.
[8] Mr. Coleman disputes this fact. He references Plaintiff's Exhibit C (Dkt 57-3), handwritten minutes from a pretrial hearing on April 26, 2011. At the bottom of the page it states "Court hears testimony for Guardians of victim to address victims recant – at next hearing court will address recant." It is unclear who made this notation. The Exhibit is described as a certified copy but there is no indication from the face of document that it is, in fact, a certified copy, nor is the source of the handwriting clear. In any event, this notation does not create a genuine fact in dispute.

filed the instant lawsuit naming Deputy Prosecutor Meyer, the prosecution of Mr. Coleman was reassigned to Deputy Prosecutor Amy Butz.

Deputy Prosecutor Butz spoke with the S.R.'s mother on February 2, 2012, and explained that Mr. Coleman had rejected all proposed plea terms, that trial was upcoming, and the cooperation and court testimony of the S.R. and his mother would be necessary. During Deputy Prosecutor Butz's conversation with S.R.'s mother, the mother expressed that she and her son were unwilling to testify at trial or otherwise participate in Mr. Coleman's prosecution any longer and stated that she and her son would prefer charges against Mr. Coleman be dismissed.

With the input of her supervisor, Deputy Prosecutor Butz determined that without the cooperation and testimony of S.R., the State would likely lack sufficient evidence to prove the Mr. Coleman's guilt beyond a reasonable doubt at trial and therefore determined that dismissal of the charges was the most appropriate course of action.

On February 2, 2012, the prosecutor's office dismissed the battery and criminal confinement charges against Mr. Coleman.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate where the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Westra v. Credit Control of Pinellas,* 409 F.3d 825, 827 (7th Cir. 2005) (*quoting* Rule 56(c) of the *Federal Rules of Civil Procedure*). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible

evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

The key inquiry, then, is whether admissible evidence exists to support a plaintiff's claims, not the weight or credibility of that evidence, both of which are assessments reserved for the trier of fact. *See Schacht v. Wis. Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). Indeed, the existence of cross-motions for summary judgment does not necessarily mean that there are no genuine issues of material fact. *R.J. Codman Derailment Serv., Inc. v. Int'l Union of Operating Eng.'s.,* 335 F.3d 643, 647 (7th Cir. 2003). Rather, the process of taking the facts in the light most favorable to the nonmoving, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *Oregon v. Arbitration Forums, Ins.*, 246 F.3d 975, 983 (7th Cir. 2001) (*quoting Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

Before, applying the standard set forth above to the claims in this case, it is appropriate to address the scope of the evidence considered. Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. Proc. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. Proc. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. Proc. 56(c)(4). Failure to properly support

a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially the grant of summary judgment. Fed. R. Civ. Proc. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. Proc. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson v. Cambridge Indus.,* 325 F.3d 892, 898 (7th Cir. 2003). Furthermore, reliance on the pleadings or conclusory statements backed by inadmissible evidence is insufficient to create an issue of material fact on summary judgment. *Id.* at 901.

Mr. Coleman cites to his own second amended complaint as evidence in support his motion for summary judgment. This is problematic, but not because the second amended complaint is "self-serving" as Defendants suggest. The Seventh Circuit has repeatedly warned against objecting to an affidavit on this basis. *See Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006). "Most affidavits are self-serving, as is most testimony, and this does not permit a district judge to denigrate a plaintiff's evidence when deciding whether a material dispute requires trial." *Id.*; *Wilson v. McRae's, Inc.*, 413 F.3d 692, 694 (7th Cir. 2005); *see also Dalton v. Battaglia*, 402 F.3d 729, 735 (7th Cir. 2005) ("We have repeatedly stated that the record may include a so-called 'self-serving' affidavit provided that it is based on personal knowledge.").

Because Mr. Coleman signed his second amended complaint under penalty of perjury, this Court may treat that pleading as an affidavit and consider it as evidence. "By declaring under penalty of perjury that the [Complaint] was true, . . . he converted the [Complaint], or rather those factual assertions in the [Complaint] that complied with the requirements for affidavits specified in the rule . . . into an affidavit." *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (*quoting Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996)); *see also Payette v. Hoenisch,* 284

Fed. Appx. 348, 350, 2008 WL 2648917, *1 (7th Cir. 2008) (by declaring under penalty of perjury that the complaint and response were true, the plaintiff "converted" those filings into affidavits). However, only factual assertions which are made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated are "affidavit material"; everything else may be disregarded. *See Ford*, 90 F.3d at 247.

The problem for Mr. Coleman is that his second amended complaint is filled with legal conclusions, legal arguments, irrelevant facts and alleged facts upon which he could not have personal knowledge. The Seventh Circuit has warned against this practice:

> The federal rules envisage the submission of evidentiary material in response to a motion for summary judgment as a means of sharpening the issues, so that the judge can determine just what if anything must be tried. . . . For the plaintiff, instead of doing this, just to point to factual assertions in his verified complaint is bound to make the identification of genuine issues of material fact difficult, complicating the work of the judge.

*Ford*, 90 F.3d at 247. Accordingly, the Court reviewed the verified second amended complaint (Dkt. 49, specifically pages 3-8) and the statement of undisputed facts (Dkt. 56, pages 3-8) and only included those facts which are supported by admissible evidence in the background section set forth above.

### III. DISCUSSION

Mr. Coleman's second amended complaint alleges eight counts. Count 1 alleges a violation of Mr. Coleman's right to be free from search and seizure and arrest except upon probable cause. Count 2 alleges a violation of the right to be free from infamous charges except upon proper affirmation or oath of the alleged victims. Count 3 alleges the violation of substantive and procedural due process rights, including the right to life, liberty and the pursuit of happiness. Count 4 alleges malicious prosecution. Count 5 was omitted. Count 6 alleges false

imprisonment. Count 7 alleges intentional infliction of emotional distress. Count 8 alleges failure to administer medical attention. Each of Mr. Coleman's claims is discussed below.

### A. Probable Cause to Arrest

Mr. Coleman alleges that he was arrested, charged, and prosecuted without probable cause and falsely imprisoned. Defendants claim that they are entitled to summary judgment because probable cause existed for Mr. Coleman's arrest and thus Mr. Coleman cannot establish a valid claim for false (or wrongful) arrest, malicious prosecution, or false imprisonment. In response, Mr. Coleman argues that whether probable cause existed is a material fact in dispute.

The Fourth Amendment, applicable through the Fourteenth Amendment to the United States Constitution, provides: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . particularly describing the place to be searched, and the persons or things to be seized." *Bailey v. United States,* 133 S.Ct. 1031, 1037 (2013). In other words, the Fourth Amendment prohibits unreasonable seizures. To be deemed reasonable, a warrantless arrest made in public must be supported by probable cause. *United States v. Watson*, 423 U.S. 411, 414–24 (1976). The Seventh Circuit recently explained:

> Probable cause to arrest exists if the totality of the circumstances known to the officer at the time of the arrest would warrant a reasonable person in believing that the arrestee had committed, was committing, or was about to commit a crime. *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 714 (7th Cir. 2013); *see also Maryland v. Pringle*, 540 U.S. 366, 370–71, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). It is a practical, commonsense standard that requires only the type of fair probability on which reasonable people act. *See Florida v. Harris*, ––– U.S. –––, –––– – ––––, 133 S.Ct. 1050, 1055–56, 185 L.Ed.2d 61 (2013); *Hanson v. Dane County, Wis.*, 608 F.3d 335, 338 (7th Cir. 2010).
>
> Based as it is on probabilities rather than hard certainties, the probable-cause standard inherently allows room for reasonable mistakes. *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Qualified immunity affords an even greater level of protection by shielding officers from

"suit for damages if 'a reasonable officer could have believed [the arrest] to be lawful, in light of clearly established law and the information the [arresting] officers possessed.'" *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (*per curiam*) (second alteration in original) (*quoting Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)); *see also, e.g., Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ("The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982))). In this context, qualified immunity provides shelter for officers who have "arguable probable cause" to arrest—i.e., those officers that reasonably but mistakenly believe they have probable cause. *See Abbott*, 705 F.3d at 714–15, 723–24; *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). Though they may appear to be the same, the probable-cause and arguable-probable-cause inquiries are different. *Fleming v. Livingston County, Ill.*, 674 F.3d 874, 880 (7th Cir. 2012). An arrest without probable cause is a violation of a constitutional right, whereas an arrest without arguable probable cause is a violation of a "clearly established" constitutional right. *See Hunter*, 502 U.S. at 227; *McComas v. Brickley*, 673 F.3d 722, 725 (7th Cir. 2012).

*Gutierrez v. Kermon*, -- F.3d --, 2013 WL 3481359, 3-4 (7th Cir. 2013).

There is no evidence that Officer Denny prepared the probable cause affidavit in bad faith by knowingly "presenting false statements" as Mr. Coleman suggests. *See* Dkt. 70 at p. 15. Officer Denny's probable cause affidavit included the statements he relied upon to support his finding of probable cause and included Mr. Coleman's statement that he was simply wrestling with the alleged victim and that the minor was upset because he was teased. Officer Denny did not need to include Mr. Coleman's statement that the alleged victim and other witnesses were lying because it is obvious on the face of the affidavit that Officer Denny was told two contradictory stories.

Based on the totality of the circumstances in this case, Officer Denny had probable cause to arrest Mr. Coleman for battery and criminal confinement of the S.R. Officer Denny interviewed S.R., witnesses to the incident, and Mr. Coleman himself before making the arrest. The accounts of the incident given by the victim's family and witnesses corroborated S.R.'s

version of events. Mr. Coleman did not deny placing S.R. in a headlock, causing S.R. to sustain skin abrasions and leading someone to call the police regarding the issue. Taken together, Officer Denny had a sufficient foundation to conclude at the time of the arrest, that Mr. Coleman had committed a crime. In addition, Officer Denny is entitled to qualified immunity because a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the Officer Denny possessed at the time.

The existence of probable cause is an absolute defense to a § 1983 claim for false arrest. *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006). Because there was probable cause for arrest, the Defendants—Officer Denny in particular—are entitled to summary judgment in their favor on the false arrest claim (Counts 1 and 6).

**B.     Malicious Prosecution**

Mr. Coleman argues that Defendants "tried to prosecute an innocent individual." Dkt. 70 at p. 2. "To state a claim for malicious prosecution under Section 1983, a plaintiff must demonstrate that: (1) he has satisfied the requirements of a state law cause of action for malicious prosecution; (2) the malicious prosecution was committed by state actors; and (3) he was deprived of liberty." *Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996). Under Indiana law, a plaintiff must establish that: "(1) the defendant instituted or caused to be instituted a prosecution against the plaintiff; (2) the defendant acted with malice in doing so; (3) the prosecution was instituted without probable cause; and (4) the prosecution terminated in the plaintiff's favor." *Zisis v. St. Joseph Twp.*, 979 F. Supp. 806, 813 (N.D. Ind. 1997) (*citing Butt v. McEvoy,* 669 N.E.2d 1015, 1017 (Ind. Ct. App. 1996)).

As explained above, there was probable cause to arrest Mr. Coleman and to initiate prosecution. This fact is sufficient to defeat the claim of malicious prosecution under Indiana law

and the Defendants are entitled to summary judgment in their favor on this basis. But even if there was not probable cause, to survive summary judgment on his claim for malicious prosecution, Mr. Coleman would also need evidence to prove "that the officers committed some improper act after they arrested him without probable cause." Mr. Coleman has argued that Officer Denny omitted in his probable cause affidavit that that Mr. Coleman told him the witnesses were lying, however as mentioned earlier, this omission not an improper act as Mr. Coleman's version of events was included in the affidavit. Instead, Mr. Coleman would need to show for example, that officers "pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence." *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 901 (7th Cir. 2001) (*citing Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998) and *Reed*, 77 F.3d at 1053-54)).  There is no such evidence in this case as to any of the Defendants.

Accordingly, summary judgment is granted in favor of the defendants on Coleman's malicious prosecution claim (Counts 2 and 4).

**C.     False Imprisonment**

Mr. Coleman alleges false imprisonment. He explains that Officer Denny and Deputy Prosecutor Meyer restrained him without just cause by arresting him and wrongfully trumping up charges against him, even though they knew he was innocent.

As set forth above, the evidence in this matter establishes that probable cause existed as a matter of law to arrest Mr. Coleman for battery and criminal confinement.  Accordingly, Mr. Coleman's claim for false imprisonment fails.  Mr. Coleman's imprisonment was incidental to his lawful arrest and detention for which probable cause existed.  Mr. Coleman has not presented any evidence upon which a reasonable trier of fact could conclude that his detention was

unlawful. Summary judgment in favor of the Defendants on this claim (Count 3) is therefore proper.

**D.     Claims against Judge Hill**

Mr. Coleman alleges that Judge Hill "misused his power," thereby depriving him of certain constitutional rights under the First and Fourteenth Amendments. *See* Dkt. 49, ¶¶ 17-23; Dkt. 56, p. 6. This alleged misuse of power was directly related to rulings made in the course of Mr. Coleman's state criminal proceeding. In addition, Mr. Coleman complains that Judge Hill is biased against *pro se* litigants and has chastised him for representing himself. The Defendants seek summary judgment on the basis that Judge Hill is absolutely immune from suit for the conduct of which Mr. Coleman complains.

Judicial officers are protected by common law immunity from suit brought on the basis of judicial acts. *Stump v. Sparkman*, 435 U.S. 349, 356-357 (1978). The immunity is overcome only where the judge's acts were non-judicial or were taken in the clear absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 12 (1991). Neither exception applies here, as Judge Hill clearly acted in his official capacity and had jurisdiction to act with regard to criminal proceedings against Mr. Coleman. Mr. Coleman essentially alleges that Judge Hill violated his civil rights because no probable cause existed for Mr. Coleman's arrest and prosecution. (Dkt 49, ¶¶ 17-23). Judge Hill's determination regarding the existence of probable cause (even if erroneous) is a plainly judicial act for which he is immune. Similarly, Judge Hill's decision to hold Mr. Coleman in contempt of court (even if erroneous) is also a judicial act. The broad scope of absolute judicial immunity is justified "by the long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993).

Accordingly, Judge Hill is entitled to summary judgment in his favor on the claims alleged against him.

### E. Claims against Prosecutors

Mr. Coleman claims that he was wrongfully and maliciously prosecuted for battery and criminal confinement of S.R. (Dkt. 49, ¶¶ 28-29, 41-45). He also argues that Deputy Prosecutor Meyer ignored facts that demonstrated that no crime was committed on October 21, 2010 by Mr. Coleman and advised Officer Denny outside of her prosecutorial duties. The Defendants argue that defendant prosecutors are entitled to absolute immunity.

Prosecutors performing functions "intimately associated with the judicial phase of the criminal process" are entitled to absolute immunity from liability. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also Burns v. Reed*, 500 U.S. 478 (1991). In *Imbler*, the Supreme Court of the United States held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." 424 U.S. at 430. "This immunity shields the prosecutor even if he initiates charges maliciously, unreasonably, without probable cause, or even on the basis of false testimony or evidence." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986); *see also Davis v. Zirkelback*, 149 F.3d 614, 617 (7th Cir. 1998) (prosecutor entitled to absolute immunity in evaluating evidence collected by police and deciding to bring a judicial proceeding).

Mr. Coleman argues that Deputy Prosecutor Meyer acted outside of her prosecutorial duties and improperly advised Officer Denny by raising objections during Mr. Coleman's deposition of Officer Denny. However, in objecting to questions asked of fact witness Officer Denny in the criminal case deposition, Deputy Prosecutor Meyer was acting well within her capacity and responsibilities as a prosecutor and attorney for the State to preserve objections to

such questions for trial. Although in this role, Deputy Prosecutor Meyer was not entitled to absolute immunity, there is no plausible basis to conclude the Deputy Prosecutor Meyer's objections during a deposition violated Mr. Coleman's constitutional rights. *Burns v. Reed*, 500 U.S. 478, 494 (1991) (finding no absolute immunity for claims arising out of giving legal advice to the police).[9] The prosecutors are absolutely immune to claims arising from their evaluation of the evidence against Mr. Coleman, their decision to pursue criminal charges against him, and their role in deciding to dismiss charges against him, including the timing of such dismissal.

To the extent state law claims are alleged against the prosecutors they are also entitled to summary judgment on those claims because the Indiana Tort Claims Act expressly exempts from liability the initiation of judicial proceedings and the performance of discretionary functions. Ind. Code § 34-13-3-3(6) (2013); *see Foster v. Pearcy*, 387 N.E.2d 446, 449-50 (Ind. 1979). No liability will attach to any acts reasonably within the general scope of authority granted to prosecuting attorneys. *Foster,* 387 N.E.2d at 538; *see also Sims v. Barnes*, 689 N.E.2d 734, 737-38 (Ind. Ct. App. 1997). All claims alleged against the prosecutors are based on acts within the general scope of authority granted to them (such as deciding to prosecute) and, therefore, they are entitled to immunity and summary judgment is granted in their favor.

## F.  Failure to Train

Mr. Coleman alleges that Chief Ciesielski "failed to run a bonified Police force [and] failed to train his officers on how to prepare probable cause affidavits," and Prosecutor Curry allegedly failed to train his employees. Dkt. 70 at p. 2. Mr. Coleman alleges that Officer Denny's and Detective Smiley's actions reflect back on Chief Ciesielski in his official capacity for his failure to properly train officers on the meaning of 'Probable Cause' and how to properly

---

[9] Because no clearly established constitutional right was violated by Deputy Prosecutor Meyer during Mr. Coleman's deposition of Officer Denny, she is entitled to qualified immunity as to any claim arising out of that conduct.

fill out an affidavit to support probable cause for arrest. Mr. Coleman describes this failure to train as a custom which is the "cause of destruction and mayhem in the homes of the citizens of the City of Indianapolis." Dkt. 56 at p. 4.

The Court is not persuaded. Any state law claims of negligent training, supervision, and/or discipline are barred by the discretionary function immunity provision of the Indiana Tort Claims Act ("ITCA"). See Ind. Code § 34-13-3-3(7). Indiana courts have consistently held that governmental entities are immune from liability as a matter of law for negligent training, employment, supervision, and discipline of public employees and officers under the discretionary function immunity provision of the ITCA. *Lamb v. City of Bloomington*, 741 N.E.2d 436 (Ind. Ct. App. 2001); *Foster*, 387 N.E.2d at 450 ("Clearly, the employment and supervision of deputies and employees in governmental offices…is a discretionary function."). In this case, Prosecutor Curry and Chief Ciesielski are entitled to discretionary function immunity as to any state tort claims of negligent training, supervision, and discipline. Their decisions as to how to train and supervise employees and/or officers, as well as any decisions regarding whether or not to discipline a deputy prosecutor or police officer for a particular act, are entitled to immunity.

Moreover, Mr. Coleman has presented no evidence that Deputy Prosecutor Meyer, Officer Denny, or any other party was inadequately trained or improperly supervised. Similarly, there is no evidence that an official municipal policy existed within the Marion County Prosecutor's Office or the IMPD which caused a violation of Mr. Coleman's constitutional rights. Therefore, the defendants are entitled to judgment as a matter of law on any constitutional or state law claim of negligent training, supervision, or discipline.

### G.    Failure to Administer Medical Attention

Mr. Coleman states that on September 6-7, 2011, while held in contempt he was denied medical attention for his high blood pressure by the nurse on duty and several guards at the arrestee processing center.  Mr. Coleman states that he "believes this hidden motive was based on the previous lawsuit filed by Mr. Coleman and some hidden vendetta against him by other State Actors."  Dkt. 56 at p. 21.  This claim must be dismissed for two reasons.  First, there is no evidence upon which a reasonable person could conclude that any of the Defendants were personally responsible for the alleged denial of medical care.  Liability in a § 1983 claim requires personal responsibility.  *Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir. 2005).  These Defendants cannot be held liable simply because of their supervisory positions. *See West v. Waymire,* 114 F.3d 646, 649 (7th Cir. 1997) ("the doctrine of *respondeat superior* is not available to a plaintiff in a section 1983 suit"); *Burks v. Raemisch,* 555 F.3d 592, 593-94 (7th Cir. 2009) ("Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise. . . . *Monell's* rule [is that] that public employees are responsible for their own misdeeds but not for anyone else's.") (citing *Monell v. New York City Dep't of Social Services,* 436 U.S. 658 (1978)).

Second, the Defendants correctly point out that the events Mr. Coleman complains of – insufficient medical care – occurred while he was a pretrial detainee. Thus, Defendants argue Mr. Coleman's status as a pre-trial detainee causes the Eighth Amendment to be inapplicable. The Defendants are correct; it is the Fourteenth Amendment which applies to pretrial detainees. *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012) (*citing Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979)).  Courts still look to Eighth Amendment case law in

addressing the claims of pretrial detainees, given that the protections of the Fourteenth Amendment's due process clause are at least as broad as those that the Eighth Amendment affords to convicted prisoners. *Rice ex rel. Rice v. Correctional Medical Services*, 675 F.3d 650, 664 (7th Cir. 2012)(citing cases). Mr. Coleman's error in pleading cruel and unusual punishment under the Eighth Amendment might have been overlooked if there was any evidence to support a claim of denial of medical care, but there is not. The Defendants are therefore entitled to summary judgment on this claim (Count 8).

**H.     Intentional Infliction of Emotional Distress**

Mr. Coleman alleges that the Defendants intentionally and deliberately inflicted emotional distress by maliciously prosecuting him, violating his constitutional rights, and falsely arresting and imprisoning him. He argues that the Defendants knew or should have known that emotional distress was the likely result of their conduct.

Indiana common law recognizes a claim for intentional infliction of emotional distress where on "by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991). The Indiana Supreme Court in *Cullison* emphasized "[i]t is the intent to harm the plaintiff emotionally which constitutes the basis for the tort of intentional infliction of emotional distress." *Id.*

In order to successfully prove a claim of intentional infliction of emotional distress, Mr. Coleman must demonstrate that the Defendants: (1) engaged in extreme and outrageous conduct (2) which intentionally or recklessly (3) caused (4) severe emotional distress to another. *Lindsey v. DeGroot*, 898 N.E.2d 1251, 1264 (Ind. Ct. App. 2009).

There is no evidence that any of the Defendants' actions were outrageous in character or that any of the Defendants acted intentionally or recklessly with the intention of causing severe

18

emotional distress. There is no evidence that any of the Defendants knew Mr. Coleman or desired to cause him harm. The fact that Mr. Coleman was arrested, charged, and initially prosecuted on the battery and criminal confinement charges does not exceed the bounds of decent society where probable cause existed for the arrest. Officer Denny and the other Defendants' acted reasonably based upon the initial statements from the witnesses. It is unfortunate that Mr. Coleman was incarcerated for five months before S.K. and his parents presented the affidavit and engaged in discussions with prosecutors which ultimately led to the case being dismissed. But in light of all the circumstances, the Defendants are entitled to judgment as a matter of law in their favor on the claim of intentional infliction of emotional distress (Count 7).

## IV.  CONCLUSION

Mr. Coleman has not identified a genuine issue of material fact as to his claims in this case, and the Defendants are entitled to judgment as a matter of law. Therefore, Mr. Coleman's Motion for Summary Judgment (Dkt. 55) is **DENIED** and Defendants' Motion for Summary Judgment (Dkt. 62) is **GRANTED**. Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 09/16/2013 _____

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Mr. Wayde Coleman
11313 Lynchburg Way
Indianapolis, Indiana  46229

Alexander Phillip Will
City of Indianapolis, Corporation Counsel
awill@indygov.org

Beth Ann Garrison
City of Indianapolis, Corporation Counsel
bdale@indygov.org

Cameron G. Starnes
City of Indianapolis, Corporation Counsel
Cameron.starnes@indygov.org